**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

JOINT SPORTS CLAIMANTS,

*Appellants*,

v.

LIBRARIAN OF CONGRESS,
REGISTER OF COPYRIGHTS, and
COPYRIGHT ROYALTY BOARD,

*Appellees*.

Case No. 26-1222

**NOTICE OF APPEAL**

Pursuant to Section 803(d) of the Copyright Act of 1976, as amended by the Copyright Royalty and Distribution Reform Act of 2004, 17 U.S.C. § 803, and Rule 15 of the Federal Rules of Appellate Procedure, the Office of the Commissioner of Baseball, National Basketball Association, National Football League, National Hockey League, Women's National Basketball Association, and National Collegiate Athletic Association (collectively the "Joint Sports Claimants" or "JSC") hereby appeal from the Copyright Royalty Board's ("CRB") Order 7 Addressing Overpayments issued in restricted form on July 22, 2026 and issued publicly on August 10, 2026, in Docket Nos. 2012-6-CRB-CD-2004-2009 and 2012-7-CRB-SD-1999-2009, ("Final Overpayment Determination"), as well as from all interlocutory orders and from all preceding and subsequent orders and actions

subsumed in the Final Overpayment Determination. Although the Final Overpayment Determination has not been published in the Federal Register, JSC is filing this notice of appeal protectively within 30 days of its issuance because the CRB has not indicated that it intends to publish the determination. A copy of the Final Overpayment Determination (public version) is attached hereto as Exhibit A.

Dated: August 20, 2026

Respectfully submitted,

*/s/ Elisabeth S. Theodore*
Daniel Cantor
Elisabeth S. Theodore
Rosemary Szanyi
Michael Kientzle
Daniel Yablon
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
Elisabeth.Theodore@arnoldporter.com
*Counsel for the Office of the Commissioner of Baseball*

Philip R. Hochberg
LAW OFFICES OF PHILIP R. HOCHBERG
12505 Park Potomac Avenue
Potomac, MD 20854
*Counsel for the National Basketball Association, National Football League, National Hockey League, and Women's National Basketball Association*

Jeremy Dutra
SQUIRE PATTON BOGGS (US) LLP
2550 M. St., N.W.
Washington, D.C. 20037
*Counsel for the National Collegiate Athletic Association*

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| JOINT SPORTS CLAIMANTS,<br><br>*Appellants*,<br><br>v.<br><br>LIBRARIAN OF CONGRESS,<br>REGISTER OF COPYRIGHTS, and<br>COPYRIGHT ROYALTY BOARD,<br><br>*Appellees*. | Case No. ________ |

**RULE 26.1 DISCLOSURE STATEMENT**

The Office of the Commissioner of Baseball ("MLB"), National Basketball Association ("NBA"), National Football League ("NFL"), National Hockey League ("NHL"), Women's National Basketball Association ("WNBA"), and National Collegiate Athletic Association ("NCAA") are collectively referred to in these proceedings as the "Joint Sports Claimants" ("JSC"). JSC members represent more than 250 teams, educational institutions, and athletic conferences that own copyrights to live sports programming that is retransmitted by cable systems under the compulsory license provisions of the Copyright Act, 17 U.S.C. § 111. As permitted by 17 U.S.C. § 111(d)(4)(A), JSC members have agreed to a proportionate division of royalties among themselves, designated a common agent to receive

payments on their behalf, jointly presented a single claim for royalties in royalty distribution proceedings, and appeared as a group in the proceeding below.

MLB is an unincorporated association whose members are the thirty major league baseball clubs engaged in the business of creating, organizing, promoting, and exhibiting Major League Baseball games. The NBA is an unincorporated joint venture composed of thirty member clubs engaged in the business of creating, organizing, promoting, and exhibiting professional basketball games. The NFL is an unincorporated association composed of thirty-two member clubs engaged in the business of creating, organizing, promoting, and exhibiting professional football games. The NHL is a joint venture organized as an unincorporated association not-for-profit composed of thirty-two member clubs engaged in the business of creating, organizing, promoting, and exhibiting professional hockey games. The WNBA is a limited liability corporation that includes fifteen teams engaged in the business of creating, organizing, promoting, and exhibiting professional basketball games. The NCAA is a voluntary, not-for-profit association of more than 1,200 colleges, universities, conferences, and other organizations that participate in intercollegiate athletics. If the Court requests, the Joint Sports Claimants will file a list of the members of those associations.

Dated: August 20, 2026

Respectfully submitted,

/s/ Elisabeth S. Theodore
Daniel Cantor
Elisabeth S. Theodore
Rosemary Szanyi
Michael Kientzle
Daniel Yablon
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
Elisabeth.Theodore@arnoldporter.com
*Counsel for the Office of the Commissioner of Baseball*

Philip R. Hochberg
LAW OFFICES OF PHILIP R. HOCHBERG
12505 Park Potomac Avenue
Potomac, MD 20854
*Counsel for the National Basketball Association, National Football League, National Hockey League, and Women's National Basketball Association*

Jeremy Dutra
SQUIRE PATTON BOGGS (US) LLP
2550 M. St., N.W.
Washington, D.C. 20037
*Counsel for the National Collegiate Athletic Association*

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2026, a copy of the foregoing was sent by first-class, prepaid mail to the parties listed below.

Dated: August 20, 2026

*/s/ Elisabeth S. Theodore*

**Canadian Claimants Group**
L. Kendall Satterfield
Satterfield PLLC
1629 K Street NW, Suite 300
Washington, DC 20006

Victor J. Cosentino
Larson & Gaston, LLP
200 S. Los Robles Ave, Suite 530
Pasadena, CA 91101

**Program Suppliers**
Gregory O. Olaniran
Lucy Holmes Plovnick
Jacob D. Albertson
Chloe N. George
Brandon E. Hughes
Mitchell Silberberg & Knupp LLP
1818 N Street NW, 7th Floor
Washington, DC 20036

**Commercial Television Claimants**
David Ervin
Preetha Chakrabarti
Holly Melton
Emily Kappers
Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004

**Settling Devotional Claimants**
Matthew J. MacLean
Michael A. Warley
Jessica T. Nyman
Caroline M. Block
Pillsbury Winthrop Shaw Pitman LLP
1200 17th Street NW
Washington, D.C. 20036

Arnold P. Lutzker
Benjamin Sternberg
Lutzker & Lutzker LLP
1233 20th Street, NW, Suite 703
Washington, D.C. 20036

**Public Television Claimants**
Ronald G. Dove, Jr.
Dustin Cho
Robert Hunziker
Phillip Hill
Shinji Ryu
Jennifer Bentley
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001

R. Scott Griffin
Public Broadcasting Service
1225 S. Clark Street
Arlington, VA 22202

# EXHIBIT A

**Before the**
**COPYRIGHT ROYALTY JUDGES**
**The Library of Congress**

| | |
|---|---|
| ***In re*** <br><br> **DISTRIBUTION OF THE 2004-2009 CABLE ROYALTY FUNDS** | **Docket No. 2012-6 CRB CD 2004-2009 (Phase II)** |
| ***In re*** <br><br> **DISTRIBUTION OF THE 1999-2009 SATELLITE ROYALTY FUNDS** | **Docket No. 2012-7 CRB SD 1999-2009 (Phase II)** |

**PUBLIC ORDER 7 ADDRESSING OVERPAYMENTS**

On April 9, 2026, the Copyright Royalty Judges ("Judges") entered Order 5 directing parties to review calculations addressing overpayment and surplus issues and to file comments addressing whether or not they believe any clarifications to the calculations are necessary and, if so, providing an explanation of all proposed clarifications (eCRB no. 78092).

On April 21, 2026, Program Suppliers (PS), Settling Devotional Claimants (SDC), and Multigroup Claimants (participating in this proceeding as Independent Producers Group (IPG)) filed a Joint Response to Order 5 stating that they do not request any clarifications to the calculations (eCRB no. 78122). On April 21, 2026, Joint Sports Claimants (JSC) filed a response to Order 5 requesting a clarification to the calculations stating that JSC is not liable for any overpayments ("JSC Response") (eCRB no. 78123). On May 5, 2026, PS and SDC filed a motion seeking leave to file their Joint Response to the JSC Response to Order 5 (eCRB no. 78141).

In response to the May 5, 2026, Motion by PS and SDC, the Judges issued Order 6 Granting Program Suppliers and Settling Devotional Claimants' Motion for Leave to File Joint Response to Joint Sports Claimants' Response to Order 5 (eCRB no. 78144). Order 6 also allowed that any additional Responses in support of or opposition to JSC's' response to Order 5 must be filed no later than May 8, 2026, and any replies to responses must be filed no later than May 15, 2026. Pursuant to Order 6, the Judges accepted Program Suppliers and Settling Devotional Claimants' Joint Response to Joint Sports Claimants' Response to Order 5 ("PS and SDC Response") (eCRB no. 78142) and Reply of The Joint Sports Claimants to Program Suppliers and Settling Devotional Claimants Regarding Overpayment Issues ("JSC Reply") (eCRB no. 78442).

**Participant Briefing**

In the JSC Response, JSC argues that JSC is not liable for any alleged overpayments, reasoning that JSC could not possibly have been overpaid—if it had been, final distributions

could not have been made to JSC under the Copyright Act without addressing those alleged overpayments, because any overpaid funds would have been subject to controversy. JSC Response at 1-3 (eCRB no. 78123).

With regard to the 2004-09 Cable funds, JSC argues that the calculations accompanying Order 5 do not provide sufficient information to determine which parties, if any, were overpaid in connection with this distribution. JSC adds its view that if anyone was overpaid, it could not have been JSC. JSC reiterates its argument that there was no overpayment of 2004-09 cable royalties to JSC because of a final distribution of these royalties that correctly implemented the Allocation Phase Parties' agreement. *Id.* at 3-5.

With regard to the 1999, 2000-2001, 2002-2003, 2005-2007 Satellite funds, JSC reiterates its argument that there was no overpayment of royalties to JSC because of a final distribution of these royalties that correctly implemented the Allocation Phase Parties' agreement. *Id.* at 5-8.

In the PS and SDC Response, PS and SDC argue that JSC has waived its objections by failing to raise them in a timely manner as provided for in previous orders. PS and SDC Response at 2-3 (eCRB no. 78142).

PS and SDC opine that JSC has completely misunderstood the calculations at issue. PS and SDC offer that final distributions that were ordered were set forth only in terms of percentages, and not in dollars, and did not specify how growth in funds would be allocated. PS and SDC add that the Judges relied upon the participants' repayment agreements as the assurance they needed that there would be sufficient funds available from the royalty pools to pay all claims once distribution proceedings are concluded. *Id.* at 4-5.

PS and SDC argue that the calculations accompanying Order 5 do not require JSC, as such, to repay anything to the Licensing Section, because all overpayments at issue were made to common agents, rather than to JSC directly. Thus, the repayment obligations belong to the common agents (which may in turn recoup overpayments from their principals as necessary). *Id.* at 6-7.

PS and SDC offer their view that funds remaining on reserve in some years, owed to "Other" parties (i.e., parties other than Program Suppliers, SDC, and Multigroup Claimants), could be reallocated to years in which the "Other" parties have been overpaid. *Id.* at 7.

In the JSC Reply, JSC posits that the PS and SDC Response does not dispute that JSC received final distributions of all of the royalty funds at issue. JSC argues that payment of exact final distribution amounts that PS and SDC themselves agreed to is sufficient to demonstrate that JSC has not been overpaid. JSC adds that where parties have agreed to a specific methodology for the final distribution of royalties, the Judges are neither required nor able to reapportion interest accrued on deposited royalties. JSC Reply at 3-4 (eCRB no. 78442).

JSC argues that it has not waived its right to seek clarification. JSC offers that JSC was no longer a party to the captioned proceedings in 2020 and was not subject to the Judges' December 4, 2020 Order Directing Parties to Review Calculations on Final Distribution Shares (eCRB no. 23376). JSC also argues it has not waived its right to seek clarification because its

January 22, 2025, response to Orders 2 and 3 specifically stated that its response was without waiver of its position that it was not overpaid (eCRB no. 45889). JSC also argues that Order 5 invited proposed clarifications, and that JSC has provided clarification that none of the overpayments are attributable to JSC. JSC Reply at 4-6 (eCRB no. 78442).

JSC alleges errors in PS and SDC Response, suggesting that the Licensing Section calculations attribute all overpayments for certain years to final distributions made to the Office of Commissioner of Baseball as agent for JSC alone. JSC alleges that this attribution of overpayments cannot be correct as such payments were final distributions and thus not in controversy. *Id.* at 7-8.

JSC also argues that Licensing Section cannot demand recoupment from the Office of Commissioner of Baseball, as the Office of Commissioner of Baseball did not sign repayment agreements with the Copyright Office. *Id.* at 8-9.

**Analysis and Conclusion**

The Judges, having considered the entirety of the relevant briefing, find that the issue of existence of overpayments to be recouped from "the other Allocation Phase Parties" (those other than MPA, SDC, and Independent Producers Group) by Licensing Section is settled. *See e.g.* Order 1 Granting Joint Motion for Order Addressing Overpayment and Surplus Issues (March 18, 2024) (eCRB no. 41702). The Judges are not persuaded by any of the arguments in the relevant briefing to revise that settled conclusion.[1]

In their January 11, 2021, Order Clarifying Calculation of Final Distribution Shares and Directing Final Distribution of Royalty Funds, the Judges agreed with the proposition that Licensing Section should recover shortfalls from the claimants who were overpaid by prior partial distributions pursuant to the repayment agreements that they executed before receiving any partial distributions, and that other Allocation Phase Parties have a collective obligation to repay those overpaid royalties to the Licensing Section. Order Clarifying Calculation of Final Distribution Shares and Directing Final Distribution of Royalty Funds at 3 (eCRB no. 23437).

JSC is correct that funds distributed pursuant to the relevant *final* distribution Orders are not subject to recoupment for overpayment, as such payments may only be made to the extent that the Judges have found that the distribution of such fees is not subject to controversy (as a matter of determinations of proper allocation and distribution). However, *partial* distributions are subject to repayment agreements and are subject to recoupment for overpayments when conditions of repayment agreement are met. Such is the case here. *See, e.g.* Paragraph 3 from the repayment agreement related to the partial distribution of 2009 Cable Royalty Funds:

> In the event that the cost of any distribution proceeding, convened for the purpose of determining the distribution of the 2009 Cable Royalty Funds, including any award or awards to a Phase I or Phase II claimant or claimants made by competent authority (*i.e.*, the Copyright Royalty Judges or the United States Court of Appeals for the District of Columbia), exceeds the amount of the 2009 Cable Royalty Funds withheld in accordance with the Partial Distribution Order, the

[1] The Judges do not find that JSC had waived arguments.

> Phase I Claimants agree to remit, will remit, and hereby agree to and will bind, if and as necessary, any successors(s) in interest or distribute(s) to remit, to the Copyright Office within thirty (30) days of the date of notification from the Copyright Office that insufficient funds exist to cover the cost of the proceeding or make a determined award or awards to a Phase I or Phase II claimant or claimants, an amount to be specified by the Copyright Office or cover the deficiency.

Here, a subsequent *final* distribution order and payments gave rise to the existence of overpayments. But it is the initial *partial* distribution and the repayment agreement that create an obligation to repay to correct a deficiency.[2]

In this situation, the distribution of such fees is not subject to controversy (as a matter of determinations of proper allocation and distribution). Rather the proper accounting methodology (including interest and repayment obligation) was the subject of controversy.

Order 5 proposed a proper accounting method for determining the amounts of overpayments and attributing overpayments to specific parties. The Judges find that no participant filed a persuasive challenge to the accounting. Therefore, the proposed interest accounting methodology is accepted by the Judges.

The Judges direct the Licensing Section to take immediate steps to recover the royalty funds that were overpaid from the other Allocation Phase Parties (participants other than Program Suppliers, SDC, and IPG), according to the methodology set forth in Order 5 and its accompanying exhibits, such methodology to be updated to account for the passage of time and accrual of interest as of July 15, 2026, and the deadline for repayment, to occur no later than August 5, 2026.

The briefing indicates to the Judges a need to clarify the proper attribution of overpayments to specific parties.

The calculations that accompanied Order 5 (eCRB no. 78092) as Exhibits A, B, C and D might be interpreted to indicate that overpayment was attributed variously to "Joint Sports Claimants - Major League (Common Agent)" "Major League Central Fund (Common Agent)" and "Crowell & Moring". Such indication is hereby clarified. The overpayments are attributed to and to be recouped from the other Allocation Phase Parties – those other than Program Suppliers, SDC, and IPG. In other words, the overpayments to be recovered are attributed to, and to be recouped from, certain recipients of initial partial distributions, rather than from recipients of subsequent final distributions (although the subsequent distributions are what gave rise to the existence of overpayments).

The responsibility of specific parties to repay specific amounts from initial partial distributions for specific fund years depends on the underlying initial partial distribution orders, which were made subject to repayment agreements. Some of the relevant partial distribution

---

[2] The Judges have previously made clear that royalties distributed under 17 U.S.C. §801(b)(3)(C) and subject to a repayment agreement are "available. . . to pay all claims once distribution proceedings are concluded." Order on Motions for Distribution at 3; Docket Nos. 2007-3 CRB CD 2004-2005, *et.al*. (eCRB no. 39921).

orders set forth allocation percentages to specific parties. Some partial distribution orders did not set forth allocation percentages to specific parties, and payments were ordered to a "common agent", as addressed below.

For purposes of clarity, the Judges direct Licensing Section to invoke the repayment agreements and recover amounts according to the allocation percentages addressed in the relevant underlying partial distribution orders.[3]

Where ordered partial distributions did include partial distribution percentages for specific participants, Licensing Section shall proportionally allocate the overpayment amount among the participants to determine the amount of repayment due from individual participants that received partial distributions. Each participant's repayment amount is their partial distribution share of funds divided by the total distribution share of those participants that received the overpayment and then multiplied by the overpayment amount.

By way of example:

For 2009 Cable funds, according to the methodology set forth in Order 5, the overpayment amount to be recovered in the 3.75% fund (as of the dates applied in Order 5) was $309,603.93.

The amount "overpaid to the other Allocation Phase Parties … must be recover[ed] to allow MPA [Program Suppliers], SDC, and IPG to receive their final royalty distributions" Order 1 at 2 (41702). Therefore, the 3.75% fund overpayment of $309,603.93 (as of the dates applied in Order 5) must be recovered from the participants other than Program Suppliers, SDC, and IPG. Those other participants, with regard to the 3.75% fund for 2009 CD, are Joint Sports Claimants, Commercial Television, Public Television, Music Claimants and Canadian Claimants.

According to the October 13, 2011, Order Granting Phase I Claimants' Motion For Partial Distribution Of 2009 Cable Royalty Funds (eCRB 46468) (attachment A), JSC was ordered to receive 36.9% of the 3.75% fund, Commercial Television (CTV) was ordered to receive 17.5% of such fund, Public Television (PTV) was ordered to receive 0.0% of such fund, Music Claimants (MC) was ordered to receive 3.8% of such fund and Canadian Claimants (CCG) was ordered to receive 1.3% of such fund.

JSC is responsible for repaying 36.9/59.5 of the $309,603.93 overpayment, i.e., $192,006.47

[3] *See* April 10, 2008 Order Granting Phase I Claimants' Motion for Partial Distribution of 2004 and 2005 Cable Royalty Funds (eCRB no. 36732), December 2, 2008 Order Granting Phase I Claimants' Motion For Partial Distribution Of 2006 Cable Royalty Funds (eCRB no. 39925), October 22, 2009 Order Granting Phase I Claimants' Motion For Partial Distribution Of 2007 Cable Royalty Funds (eCRB no. 39918), January 11, 2011 Order Granting Phase I Claimants' Motion For Partial Distribution Of 2008 Cable Royalty Funds (eCRB no. 39919), and October 13, 2011 Order Granting Phase I Claimants' Motion For Partial Distribution Of 2009 Cable Royalty Funds (eCRB no. 46468).

CTV is responsible for repaying 17.5/59.5 of the $309,603.93 overpayment, i.e., $91,059.98

MC is responsible for repaying 3.8/59.5 of the $309,603.93 overpayment, i.e., $19,773.02

CCG is responsible for repaying 1.3/59.5 of the $309,603.93 overpayment, i.e., $6,764.46

Where the relevant ordered partial distributions did not include partial distribution percentages for specific participants, and instead the payments were made to a common agent to preserve the confidential nature of the distribution percentages,[4] all participants who received initial partial distributions (pursuant to repayment agreements) other than Program Suppliers, SDC, and IPG are jointly responsible for repaying the overpayments plus interest. Furthermore, any Common Agents that received partial distributions shall be considered "distributee(s)" under the relevant repayment agreements.[5] In the Judges' view, the participant/signatories to the relevant repayment agreements have agreed to bind, if and as necessary, distributee(s) to remit overpayments.

Within ten (10) business days of the date of this Order, the parties shall submit a statement of agreed redactions necessary to release this order for public viewing.

**SO ORDERED.**

Jefferson, Trevor Digitally signed by Jefferson, Trevor Date: 2026.08.10 13:33:58 -04'00'

Trevor Jefferson
Chief Copyright Royalty Judge

DATED: August 10, 2026

[4] *See*, October 17, 2001, Distribution Order for 1999 Satellite; May 27, 2005, Distribution Order for 2000 Satellite (eCRB no. 48629), September 13, 2005, Distribution Order for 2001, 2002, 2003 Satellite (eCRB no. 46472), March 23, 2010, Distribution Order for 2004, 2005, 2006, 2007 Satellite (eCRB no. 46470); January 11, 2011, Distribution Order for 2008 Satellite (eCRB no. 39919), and October 13, 2011, Distribution Order for 2009 Satellite (eCRB no. 46935).
[5] *See*, *e.g.* Repayment Agreement for 2009 Satellite Funds, at page 2.